**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KEMORLEY JOSEPH SCOTT,
                       Plaintiff,

    v.                                      No. 07-CV-936
                                                    (GLS/DRH)
RICHARD LAUX, Doctor, Auburn Correctional
Facility,
                       Defendant.

---

**APPEARANCES:**                         **OF COUNSEL:**

KEMORLEY JOSEPH SCOTT
Plaintiff Pro Se
A 42-457-434
Krome Detention Center
18201 SW 12th Street
Miami, Florida 33194

HON. ANDREW M. CUOMO           RICHARD LOMBARDO, ESQ.
Attorney General for the               Assistant Attorney General
  State of New York
Attorney for Defendant Laux
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Kemorley Joseph Scott ("Scott"), presently an inmate in the custody of the United States Immigration and Customs Enforcement agency ("ICE"), brings this action pursuant to 42 U.S.C. § 1983 alleging that Dr. Richard Laux violated his Eighth Amendment rights while Scott was in the custody of the New York State Department of Correctional Services (DOCS). Compl. (Docket No. 1); see also Docket Nos. 26, 27. Presently pending

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

is defendant's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 14. Scott has failed to respond to the motion.[2] For the following reasons, it is recommended that defendant's motion to dismiss be granted.

### I. Background

The facts are related herein in the light most favorable to Scott as the nonmoving party. See subsection II(A) infra.

All of the relevant events giving rise to the present claim occurred during Scott's incarceration at Auburn Correctional Facility ("Auburn"). Compl. ¶ 2(A). Beginning at the end of November, 2003, Scott complained to medical staff about "ring worm and penal glance [sic]," which were causing him discomfort and pain. Id. ¶ 2(D). On December 23, 2003, Scott began complaining to the medical staff at Fishkill Correctional Facility ("Fishkill") concerning "ring worm on his testicles as well as genital warts." Docket No. 1 at 8,[3] 16. Upon physical examination, no ring worm or warts were noted. Id. On January 9, 2004, Scott complained of a skin disease on his neck and groin, but offered no symptoms of any

---

[2] For various reasons, by orders dated February 12, May 29, and June 17, 2008, Scott was given three extensions of time totaling over five additional months to serve a response to defendant's motion and repeated instructions to respond to defendant's arguments. Docket Nos. 23, 25, 26. The final order directed that Scott's response was due no later than July 14, 2008. Docket No. 26 at 2. Instead of filing a response, Scott filed a letter complaining that the Court was not treating him fairly in light of his mental illness. Docket No. 27.

[3] This entry in Scott's Ambulatory Health Record ("AHR") states the date as December 2004; however, it appears that this is a mistake as the entries prior and subsequent to this notation are all dated December 2003 and there is another later entry dated December 23, 2003 stating the same subjective complaints from Scott and objective findings after physical examination.

2

disease and upon examination was noted to have an essentially normal condition.  Id. at 17.[4]

On January 22, 2004, Scott was referred to a dermatologist for his skin condition and to perform a biopsy.  Id. 12.  Scott was seen by a dermatologist on February 19, 2004 for the "multiple small esphitic raised eruptions around the base of [his] gland penis – which are probable condyloma.[5]"  Id. 14.  On March 18, 2004, Scott underwent a biopsy at the dermatologist's recommendation for his asymptomatic penile papilloma.[6]  Id. 9.  The notes reflect that these eruptions were "unlikely codyloma" and instead, fibroephithelial polyps.[7]  Id. 14, 46.

Scott's AHR reflects his transfer to Auburn from Fishkill on or about July 13, 2005.  Id. 21.  On July 13, Scott requested to see a physician and asked for pills to treat his ring worm, claiming that he had received such medication in the past although he could not remember the medication.  Id.  Two days later, Scott was visited at his cell but was not ready for sick call and did not see a physician.  Id. 22.  Later that day, Scott complained of

---

[4] In Scott's complaint, he contends that among the injuries he sustained was "heart ache."  Compl. ¶ III.  On November 29 and December 12, 2005, Scott complained of daily, recurrent heartburn and chest pains respectively.  Docket No. 1 at 32-33.  However, these were the only instances of anything remotely resembling heartache and it appears that they were both addressed timely by individuals who are not named as defendants in the instant case.

[5] Condylomata are also know as genital warts.  THE MERCK MANUAL 1338-39 (17th ed. 1999) [hereinafter MERCK].

[6] A papilloma is "a benign epithelial neoplasm producing finger-like . . . projections from the epithelial surface."  DORLAND'S ILLUSTRATED MED. DICTIONARY 1223 (28th ed. 1994) [hereinafter DORLAND'S].

[7] A polyp is a "protruding growth . . . from any mucous membrane."  DORLAND'S 1331.

3

ring worm of his body and feet, which he had suffered for the last ten years. Id. Scott was diagnosed with a systemic fungal infection and given prescription medication. Id.

On July 19, 2005, Scott requested to speak with a physician about the possibility of burning off his genital warts as they had plagued him for three years. Id. 23. It was noted that there was no drainage from the growths and that Scott was scheduled to speak to defendant Laux on July 27, 2005. Id. Two days later, Scott again complained of his genital warts and requested to see a physician. Id. A visual inspection of the affected area was deferred. Id. Three days later, Scott again asked when he would see a physician, stating that his warts were burning. Id. It was noted that he would see D.N. Kooi on August 1, 2005. Id.

On August 1, Scott was seen by Kooi, who noted a small wart and prescribed a cream application. Id. 24. This prescription and another for his skin irritation were renewed on August 12, 2005. Id. 25. Scott continued to make complaints about his genital warts on August 18, 2005. Id. A wart was still noted on his penis and he was instructed to continue with the previously prescribed treatment.[8] Id.

On September 12, 2005, Scott stated that the ring worm on his scalp was not improving with the current prescription. Id. 26. On September 22, 2005, Scott saw Kooi again concerning his ring worm, was noted to have a few areas of what appeared to be a fungal infection, and was prescribed different medication. Id.

---

[8] In a subsequent AHR entry dated August 25, 2005, Scott inquired when he would start the prescription treatment. Docket No. 1 at 25. It is unclear from this and previous entries whether the second course of treatment was merely ordered from the pharmacy or whether Scott received the medication, performed the second course, and was waiting for a third.

On or about October 2005, Scott was transferred from Auburn to Sing Sing Correctional Facility ("Sing Sing"). Id. 29. On October 17, 2005, Scott complained of the persistent ring worm on his scalp and body. Id. On October 11, 2005, the AHR noted that despite Scott's complaints of ring worm on his scalp, he was in no acute distress. Id. 34  On October 18 and 19, Scott was evaluated and no rash was found on either occasion. Id.  Scott was evaluated on October 24, 2005 and found to have a small patch of skin irritation on his neck and no infection observed on his penis, which in fact had a normal appearance. Id. 29. On August 10 and 11, 2006, Scott again complained of testicular pain. Id. 40. On October 26 and November 2, 2006, Scott complained of a rash on his scalp, although he was in no distress. Id. 45. Scott was prescribed a special shampoo for his scalp. Id.

On or about November 12, 2006, Scott was transferred back to Auburn. Id. 44. On November 19, 2006, Scott complained that he needed special shampoo for the ring worm on his scalp, but medical staff did not find any ring lesions upon inspection. Id.  Ten days later, Scott was examined by the dermatologist and was prescribed two medications. Id. 43. On December 18, 2006, Scott complained about a milky white substance coming from, and burning sensation occurring in, his penis. Id.

Nurse administrator Ryerson authored a letter dated January 3, 2007 which stated that "Laux . . . treated [Scott] with a medication for one month [and d]uring [the] recent follow up appointment the PA ordered blood work and medications for other problems [Scott was] experiencing." Id. 53. A few days later, Scott received another letter from Ryerson which noted that Scott had "a polyp on [his] penis, [t]here is [sic] no infections identified. " Id. 56. On January 11, Ryerson wrote Scott stating that all the laboratory work and the urinalysis which Laux ordered were negative, Scott was being "treat[ed] . . . for a fungal infection, not

ring worm, [and] the lab slip . . . in [his] records identifies the papule[9] as a polyp." Id. 55. This action followed.

## II.  Discussion

Scott asserts a cause of action against Laux under the Eighth Amendment claiming deliberate indifference to his serious medical needs.  Defendant moves to dismiss claiming that Scott has failed to state a cause of action as there was no deliberate indifference to a serious medical need.  Additionally, defendant claims that he is entitled to qualified immunity. .

### A. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y. 2006) (citing De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King &

---

[9] "A papule is a solid, elevated lesion usually [less than] 10 mm." MERCK 781.

6

Spalding, 467 U.S. 69, 73 (1984); Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted).

### B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the

prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Id. 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for

8

specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

In this case, Scott alleges that his ring worm and penile warts constituted a serious medical condition.[10] However, the medical record indicates that Scott was not suffering from either of these conditions but merely from a fungal infection. Compl. ¶ 22, 26. Fungal infections of the feet have not been found to constitute serious medical needs in federal court. See Cox v. Hartshorn, 503 F. Supp. 2d 1078, 1086 (D. Ill. 2007) ("[F]ungal foot rash is not so serious that it is life threatening or poses a risk of needless pain or lingering disability.") (citations omitted); Sanders v. Allen County Jail, No. 06-CV-302 (RL), 2006 WL 2578977, at *2 (N.D. Ind. Sept. 6, 2006) (holding that a dirty, moldy shower which resulted in plaintiff contracting Athlete's foot was not a serious medical condition). By extension, a fungal infection on one's body would not suffice to warrant Eighth Amendment protection.

---

[10] Federal courts and federal defendants have not traditionally litigated the seriousness of genital warts as a medical condition but have more often relied on the presence or absence of deliberate indifference when evaluating the sufficiency of a plaintiff's claims. See Mitchell v. Luttree, No. 06-2442-JPM-dkv, 2008 WL 2485596, at *5 (W.D. Tenn. June 17, 2008) (discussing the provision of medication and treatment as defendants conceded that genital herpes was a serious condition); Hilton v. McHugh, No. 03-CV-166 (MCR/WCS), 2007 WL 4578987, at *6 (N.D. Fla. Oct. 27, 2007) (dismissing claim based on lack of deliberate indifference when providing Valtrex, specifically stating that the court declined to decide the issue of medical seriousness); Rodriguez v. Brewington-Carr, No. Civ.A. 98-442-GMS, 2000 WL 1010263, at *3 n.5 (D. Del. July 13, 2000) ("Based on [plaintiff's] complaint, and the further description of the medical risks associated with genital warts . . . , it would appear that [plaintiff's] allegations in that regard are sufficient to survive a motion to dismiss.").

But see Fox v. Brown, No. 05-CV-1292 (LEK/GJD), 2007 WL 586724, at *8 (N.D.N.Y. Feb. 21, 2007) ("This court is not prepared to state that skin rash could not be a serious medical need under any circumstances.").

Nevertheless, at this stage, the allegations of the complaint must be read liberally and in the light most favorable to Scott. Thus, it will be assumed for the sake of argument that Scott has alleged a condition more serious than a fungal infection and that his condition is sufficiently serious. Even assuming this, however, Scott has not alleged any facts which would support his claim for deliberate indifference. The fact that Scott felt that he had genital warts and ring worm on his testicles and that Laux diagnosed the less serious condition is not sufficient to state deliberate indifference. See Jarecke v. Hensley, 552 F. Supp. 2d 261, 264 (D. Conn. 2008) ("Disagreement over proper treatment or diagnosis does not create a constitutional clam as long as the treatment was adequate.") (citing Estelle, 429 U.S. at 107). This mere disagreement in diagnosis and treatment does not rise to the level of a Constitutional violation.

Moreover, there are no allegations or indications in the record that Laux ever intentionally denied, delayed, or interfered with any of Scott's treatment. While at Auburn, Scott was given multiple types of prescription medication and had blood drawn and laboratory work completed. Compl. ¶¶ 53, 55, 56. The results of these diagnostic tests and a biopsy were negative, showing that Scott did not have ringworm or genital warts but had a fungal infection with asymptomatic polyps on his penis. Id. The treatment that was administered was prompt and appropriate in determining what ailment, if any, Scott was experiencing. Scott's conclusory allegations, absent anything else to substantiate his claims of deliberate indifference, are insufficient to state a claim.

Accordingly, defendant's motion on this ground should be granted.

### 2. Qualified Immunity

Defendant claims that even if Scott's constitutional claims survive, defendant is entitled to qualified immunity.

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Scott's allegations as true, he has not shown that defendant violated his constitutional rights.

Therefore, it is recommended in the alternative that defendant's motion on this ground be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion to dismiss (Docket No. 14) be **GRANTED** and that the complaint be **DISMISSED** in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 30, 2008
Albany, New York

_David R. Homer_
United States Magistrate Judge